ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUN 1 0 2015

CLERK, U.S. DISTRICT COURT
By
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA

v.

NOBLE U. EZUKANMA        (01)
MYRNA S. PARCON          (02)
   a.k.a. MERNA PARCON
LITA S. DEJESUS          (03)
RANSOME N. ETINDI        (04)
OLIVA A. PADILLA         (05)
BEN P. GAINES            (06)

NO.

FILED UNDER SEAL

**3-15CR-0254B**

INDICTMENT

The Grand Jury charges:

At all times material to this Indictment, unless otherwise specified:

**General Allegations**

1.     The Medicare Program (Medicare) was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Individuals receiving benefits under Medicare were referred to as Medicare beneficiaries.

2.     Medicare was a "health care benefit program," as defined by 18 U.S.C § 24(b).

3.     Physicians, clinics, and other health care providers, including home health agencies, that provided services to Medicare beneficiaries were able to apply for and obtain a Medicare provider number. A health care provider that was issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for

Indictment – Page 1

services provided to beneficiaries. A Medicare claim was required to truthfully set forth, among other things, the beneficiary's name and Medicare identification number, the services that were performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other health care provider that rendered the services.

4.      For billing and reimbursement purposes under Medicare Part B, Medicare directed providers to describe services provided by using Current Procedural Terminology (CPT) codes. CPT codes were shorthand descriptors of services defined by the American Medical Association and widely available to health care providers.

5.      Part A of the Medicare program covered certain eligible home healthcare costs for medical services provided by a home healthcare agency (HHA) to beneficiaries requiring home healthcare services because of an illness or disability causing them to be homebound. Medicare Part A regulations required HHAs providing services to Medicare beneficiaries to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the HHA. Also required was a signed certification statement by an attending physician certifying that the patient was confined to his or her home and was in need of the planned home healthcare services, and an assessment of the beneficiary's condition and eligibility for home health services, called an Outcome and Assessment Information Set (OASIS).

## US Physician Home Visits

6.      US Physician Home Visits (USPHV), aka Healthcare Liaison Professionals Inc., was formed by **Noble Ezukanma, Myrna Parcon**, and **Lita Dejesus**, and others, known and unknown to the Grand Jury, in or about 2009, the exact date unknown to the Grand Jury.  USPHV submitted applications to Medicare to become a credentialed Medicare provider, effective on or about May 1, 2009.

7.      **Myrna Parcon** was the owner and managed the operations of USPHV. **Noble Ezukanma** was a medical doctor, licensed in the State of Texas on or about October 15, 1999.  **Noble Ezukanma** had an ownership interest in USPHV and provided his Medicare number to the company to use to submit Medicare claims.  **Ransome Etindi** was also a medical doctor, licensed by the State of Texas on or about September 7, 2001.  **Ransome Etindi** served as medical director for USPHV and also provided his Medicare number to the company to use in billing Medicare.  **Lita Dejesus** served various roles at the company, including overseeing Medicare billing.

8.      USPHV provided physician home visits to Medicare beneficiaries.  The primary purpose of USPHV was to certify and recertify Medicare beneficiaries for home health services, and provide medication – including controlled substances – to Medicare beneficiaries.  In most instances, USPHV did not provide primary care physician services to Medicare beneficiaries, nor did they provide continuity of care to Medicare beneficiaries.

9.      Once the company established a new patient and conducted a home visit either by **Noble Ezukanma, Ransome Etindi,** or others known and unknown to the

Indictment – Page 3

Grand Jury, USPHV at the direction of **Noble Ezukanma**, **Myrna Parcon**, and **Lita Dejesus** would submit billing for fraudulent claims for services not rendered.

10.    USPHV was located at 1513 Viceroy Drive, Dallas, Texas in the Dallas Division of the Northern District of Texas.

11.    UNEC Group was a company founded by **Noble Ezukanma** that also provided physician home services.  **Noble Ezukanma** and **Myrna Parcon**, utilized UNEC's Medicare billing number for claims associated with USPHV – thereby integrating part of UNEC into USPHV.

12.    **Myrna Parcon,** and others known and unknown to the Grand Jury, created Medpro A-Class Services, another physician house call company, to use other Medicare provider numbers, including **Ransome Etindi's**, to submit claims.  The company, however, ultimately served as an extension of USPHV.

### A Good Home Health & Essence Home Heath

13.    A Good Homehealth (A Good), aka Be Good Healthcare, Inc., was a home health agency formed by **Ben Gaines** and others known and unknown to the Grand Jury.  In 2007, **Ben Gaines** applied for a Medicare number for A Good to submit claims for home health care.  **Myrna Parcon** purchased the company through a "straw" buyer.  **Myrna Parcon** and **Ben Gaines** concealed her ownership of A Good; however, she owned and operated the company.  **Ben Gaines** continued to work for A Good as an administrator.  A Good was located in the same office as USPHV – 1513 Viceroy Drive, Dallas, Texas, in the Dallas Division of the Northern District of Texas.

14.     Essence Home Health (Essence), aka Primary Angel Inc., was a home health agency formed by **Myrna Parcon** and **Oliva Padilla,** and others known and unknown to the Grand Jury.  Both **Myrna Parcon** and **Oliva Padilla** exercised control of the company.  On or about December 16, 2002, **Oliva Padilla** applied for a Medicare number so that Essence could submit claims to Medicare.  Essence was located at 14677 Midway Road, Suite 120, Addison, Texas in the Dallas Division of the Northern District of Texas.

Count One
Conspiracy to Commit Health Care Fraud
(Violation of 18 U.S.C. § 1349 (18 U.S.C. § 1347))

15.     The Grand Jury adopts, realleges, and incorporates by reference all the

allegations set forth in paragraphs 1 through 14 of this Indictment.

**The Conspiracy**

16.     Beginning on or about January 1, 2009, the exact date being unknown to

the Grand Jury, and continuing through on or about June 9, 2013, in the Dallas Division

of the Northern District of Texas, and elsewhere, the defendants, **Noble Ezukanma,**

**Myrna Parcon, Ransome Etindi, Oliva Padilla, Lita Dejesus,** and **Ben Gaines,** did

knowingly, intentionally, and willfully combine, conspire, confederate, and agree with

each other and with other persons known and unknown to the Grand Jury, to commit

certain offenses against the United States, that is, to knowingly and willfully execute, and

attempt to execute, a scheme and artifice: (a) to defraud Medicare, a health care benefit

program as defined in 18 U.S.C. § 24(b); and (b) to obtain money and property owned by

and under the custody and control of Medicare, a health care benefit program as defined

in 18 U.S.C. § 24(b), by means of materially false and fraudulent pretenses,

representations, and promises, in connection with payments for health care services,

namely physician house call visits and home health care, in violation of 18 U.S.C.

§ 1347.

**The Purpose of the Conspiracy**

17.     It was part of the conspiracy that **Noble Ezukanma, Myrna Parcon,**

**Ransome Etindi, Oliva Padilla, Lita Dejesus,** and **Ben Gaines** and others, known and

Indictment – Page 6

unknown to the Grand Jury, would and did unlawfully enrich themselves by:

(a) submitting false and fraudulent claims to Medicare, a health care benefit program as defined in 18 U.S.C. § 24(b), for physician house call visits and home health care; and (b) concealing from Medicare, a health care benefit program as defined in 18 U.S.C. § 24(b), the nature and existence of the conspiracy.

### The Manner and Means of the Conspiracy

18.    The manner and means by which **Noble Ezukanma, Myrna Parcon, Ransome Etindi, Oliva Padilla, Lita Dejesus,** and **Ben Gaines** and their coconspirators sought to accomplish the purpose of the conspiracy included, among others, the following, all of which occurred in the Dallas Division of the Northern District of Texas, and elsewhere:

### A.    USPHV, A Good, and Essence – the Fraudulent Business Model

19.    During the time of the conspiracy, the defendants, **Noble Ezukanma, Myrna Parcon, Ransome Etindi, Oliva Padilla, Lita Dejesus,** and **Ben Gaines,** and others known and unknown to the Grand Jury, concealed from Medicare that **Myrna Parcon** exercised control over USPHV, A Good, and Essence.  While the companies appeared to be set up as three separate entities, the companies acted as one.  The same employees often worked for all three companies and were often paid by all three companies.  As part of the fraudulent business model, **Noble Ezukanma** and **Ransome Etindi** certified 94% of the Medicare beneficiaries receiving home health services from A Good, and 65% of the Medicare beneficiaries receiving home health services from Essence.  Had Medicare known about the true ownership and improper relationship

Indictment – Page 7

between USPHV, A Good, and Essence, Medicare would not have allowed these companies to enroll in the program and bill for services.

20. From January 1, 2009 to June 9, 2013, USPHV received thousands of requests from HHAs, including A Good and Essence, to certify and recertify Medicare beneficiaries for home health services, regardless of the beneficiaries' homebound status. Most, if not all, of USPHV patients were improperly generated by referrals from HHAs. As part of the fraudulent scheme and contrary to Medicare regulations, USPHV, A Good, Essence, and all other participating HHAs reversed the home health process. HHAs requested home health care rather than home health first being ordered by a physician who: 1) had face-to-face contact treating the beneficiary; 2) believed the beneficiary eligible for the service, i.e. homebound; and 3) intended the beneficiary receive medical benefit from home health care. Once a HHA referred a patient and requested a doctor certify or recertify the beneficiary for home health care, defendants **Myrna Parcon** and **Lita Dejesus** directed USPHV employees to schedule the beneficiary for a physician home visit that would be billed to Medicare.

**B.    USPHV Fraudulent Medicare Billing**

21. USPHV, at the direction of defendants, **Noble Ezukanma, Myrna Parcon, Ransome Etindi,** and, **Lita Dejesus,** submitted all claims as if **Noble Ezukanma** provided the services to Medicare beneficiaries regardless of who actually performed the service, be it another doctor, physician assistant, or nurse practitioner. This caused Medicare to pay a higher reimbursement rate, as physician assistants and nurse practitioners are reimbursed at a lower rate. Starting in January 2013, the majority of the

Indictment – Page 8

claims for USPHV were submitted as if **Ransome Etindi** provided the services, regardless of who actually performed the services.

22.     **Noble Ezukanma**, **Myrna Parcon**, and **Lita Dejesus**, engaged in a scheme to defraud Medicare, by causing the submission of claims for reimbursement for physician home visit services that falsely represented to Medicare that physicians **Noble Ezukanma** and **Ransome Etindi** conducted comprehensive patient exams and prolonged service exams to patients, when in fact **Noble Ezukanma** and **Ransome Etindi** did not provide any such services.  Of approximately 27,000 physician home visit claims submitted to Medicare for payment, 98% of the claims billed for the prolonged service code, CPT code 99354, stated the defendants **Noble Ezukanma** and **Ransome Etindi** provided an additional 30 minutes or more of face-to-face contact beyond the time billed for the visit.  Most claims submitted at the direction of the defendants fraudulently claimed that either **Noble Ezukanma** or **Ransome Etindi** spent a minimum of 90 minutes conducting a face-to-face examination of a patient, when most visits took a total of 15 to 20 minutes.

23.     **Noble Ezukanma**, **Myrna Parcon**, and **Lita Dejesus** engaged in fraudulently submitting bills to Medicare for comprehensive patient examinations and prolonged service visits at an alarming rate.  On dates claiming services were rendered, the defendants, **Noble Ezukanma**, **Myrna Parcon**, and **Lita Dejesus**, caused to be submitted claims totaling a time of well-over 24 hours in a day – and often four to five times that amount of time.  For example:

| DATE OF SERVICES ALLEGEDLY RENDERED | TOTAL HOURS **NOBLE EZUKANMA** BILLED FOR USPHV ON THE DATE OF SERVICE |
|---|---|
| May 21, 2009 | 31.4 Hours |
| July 23, 2009 | 53.7 Hours |
| October 13, 2009 | 52.3 Hours |
| December 16, 2009 | 68.4 Hours |
| February 15, 2010 | 80.4 Hours |
| May 25, 2010 | 102.7 Hours |
| October 6, 2010 | 120.3 Hours |
| December 4, 2010 | 164.1 Hours |
| January 8, 2011 | 137 Hours |
| April 14, 2011 | 127.3 Hours |
| September 2, 2011 | 115.3 Hours |
| November 12, 2011 | 109.4 Hours |
| April 11, 2012 | 112.4 Hours |
| July 17, 2012 | 160.3 Hours |
| August 7, 2012 | 174.7 Hours |
| October 16, 2012 | 205.9 Hours |
| November 20, 2012 | 195.5 Hours |
| DATE SERVICES ALLEGEDLY RENDERED | TOTAL HOURS **RANSOME ETINDI** BILLED FOR USPHV ON THE DATE OF SERVICE |
| January 17, 2013 | 131.8 Hours |
| February 26, 2013 | 103.8 Hours |
| March 19, 2013 | 115.4 Hours |
| April 3, 2013 | 59.3 Hours |

## C.    Fraudulent Home Health Certifications

24.    From on or about January 1, 2009, to June 9, 2013, **Noble Ezukanma,**

**Myrna Parcon, Ransome Etindi, Oliva Padilla, Lita Dejesus,** and **Ben Gaines**

engaged in fraudulently certifying beneficiaries for home health care services.   HHAs,

**Indictment – Page 10**

including A Good at the direction of **Myrna Parcon** and **Ben Gaines**, and Essence at the direction of **Myrna Parcon** and **Oliva Padilla**, would provide certifications, or Medicare Form 485s, to USPHV for physician signatures to certify Medicare beneficiaries for home health care regardless if the beneficiary was eligible to receive the benefits. Over 97% of USPHV Medicare patients received home health care – whether they needed it or not.

25.    **Noble Ezukanma** and **Ransome Etindi** would sign and certify a Form 485 for each beneficiary the HHA requested, regardless of the homebound status of the beneficiary. **Noble Ezukanma** and **Ransome Etindi** signed the certifications, often without any knowledge of the patient or the patient's medical condition. Because **Noble Ezukanma** and **Ransome Etindi** had no actual knowledge of the patient's medical condition, certifying a beneficiary as homebound was impossible – therefore, the defendants certified the Form 485s fraudulently. By fraudulently certifying the Form 485, the defendants, **Noble Ezukanma, Myrna Parcon, Ransome Etindi, Oliva Padilla, Lita Dejesus,** and **Ben Gaines**, allowed HHAs, including A Good and Essence, to bill Medicare for home health services – most of which was not needed. These false 485 certifications caused Medicare to pay for fraudulent home health services in an amount over $40 million.

All in violation of 18 U.S.C. § 1349 (18 U.S.C. § 1347).

<u>Forfeiture Notice</u>
(18 U.S.C. § 982(a)(7))

Pursuant to 18 U.S.C. § 982(a)(7), upon conviction for the offense charged in

Count One, the defendants, **Noble Ezukanma, Myrna Parcon, Ransome Etindi, Oliva**

**Padilla, Lita Dejesus**, and **Ben Gaines**, shall forfeit to the United States any property,

real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds

traceable to the commission of the respective offense, including, but not limited to the

following:

a) $14,245.67 in U.S. currency seized from account #XXXXXX4049 in the name
of Noble Ezukanma, MD PA at Capital One Bank;

b) $64,707.34 in U.S. currency seized from account #XXXXXX1501 in the name
of UNEC Group, Inc., at JP Morgan Chase Bank;

c) $78,451.83 in U.S. currency seized from account #XXXXXX2062 in the name
of UNEC Group, Inc., at JP Morgan Chase Bank;

d) $344,900.00 in U.S. currency seized from 117 King Ranch Court in Fort Worth,
Texas; and

e) $3,500.00 in U.S. currency seized from 9901 Wood Forest Drive in Dallas,
Texas.

Pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1), if any of

the above-referenced property subject to forfeiture, as a result of any act or omission of

any of the defendants, cannot be located upon the exercise of due diligence; has been

transferred or sold to, or deposited with, a third party; has been placed beyond the

jurisdiction of the Court; has been substantially diminished in value; or has been

commingled with other property which cannot be subdivided without difficulty, it is the

intent of the United States of America to seek forfeiture of any other property of the

defendants up to the value of the previously-described property subject to forfeiture.

A TRUE BILL

_____
FOREPERSON

JOHN R. PARKER
ACTING UNITED STATES ATTORNEY

_____
KATHERINE E. PFEIFLE
Assistant United States Attorney
Texas State Bar No. 24041912
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:    214.659.8600
Facsimile:    214.659.8805
Email:        katherine.pfeifle@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

| | |
|---|---|
| NOBLE U. EZUKANMA | (01) |
| MYRNA S. PARCON | (02) |
| LITA S. DEJESUS | (03) |
| RANSOME N. ETINDI | (04) |
| OLIVA A. PADILLA | (05) |
| BEN P. GAINES | (06) |

SEALED INDICTMENT

18 U.S.C. §1349 (18 U.S.C. § 1347)
Conspiracy to Commit Health Care Fraud

18 U.S.C. § 982 (a)(7)
Forfeiture Notice

(1 COUNT)

A true bill rendered:

------------------------------------------------------------------------------------
FORT WORTH                                                          FOREPERSON

Filed in open court this _10th_ day of June, 2015

------------------------------------------------------------------------------------

**Warrant to Issue for the following:** Noble U. Ezukanma, Myrna S. Parcon,
Lita S. Dejesus, Ransome N. Etindi, Olivia A. Padilla and Ben P. Gaines.

------------------------------------------------------------------------------------

UNITED STATES MAGISTRATE JUDGE CURETON