UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NO. 3:15-CR-0254-B-1 |
| | § | |
| NOBLE U. EZUKANMA, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Noble Ezukanma's Motion for Compassionate Release Pursuant [to] Title 18 U.S.C. § 3582(c)(1)(A) (Doc. 512). For the reasons that follow, the motion is **DENIED WITHOUT PREJUDICE**.

### I.

### BACKGROUND

On March 24, 2017, Defendant Noble Ezukanma was found guilty of one count of conspiracy to commit health care fraud and six counts of health care fraud. Doc. 256, Jury Verdict, 1; Doc. 203, Superseding Indictment, 6–13. On September 13, 2017, he was sentenced to 200 months of imprisonment and a three-year term of supervised release. Doc. 363, J., 3–4.

Ezukanma now seeks a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) because, he contends, he suffers from "serious underlying health problems" that place him at the "highest risk of serious illness if he is exposed to the Corona virus (COVID-19) disease." Doc. 512, Def.'s Mot., 2. Ezukanma is currently sixty-one years old and has been diagnosed with hypertensive heart disease, ischemic heart disease, and chronic kidney disease, among other conditions. *Id.* at 30.

According to the Bureau of Prisons (BOP)'s website, Ezukanma is currently confined within the BOP at Texarkana Federal Correctional Institute (FCI) and is projected to be released on June 4, 2031. Texarkana FCI has tested 195 inmates and has three positive cases of COVID-19 among its staff, as well as two other cases among its inmates.[1]

Upon review, the Court concludes that Ezukanma's release is not warranted by extraordinary and compelling reasons. Therefore, Ezukanma's motion is **DENIED WITHOUT PREJUDICE**.

## II.

## LEGAL STANDARD

A district court lacks inherent authority to modify a defendant's sentence after it has been imposed. *See* 18 U.S.C. § 3582(c). But under § 3582(c)(1)(A), as amended by the First Step Act of 2018, "[a] court, on a motion by the BOP or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Chambliss*, 948 F.3d 691, 692–93 (5th Cir. 2020) (footnote omitted) (quoting § 3582(c)(1)(A)(I)); *see id.* at 693 n.1. The Court's decision must also be "consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A); *see United States v. Muniz*, 2020 WL 1540325, at *1 (S.D. Tex. Mar. 30, 2020) ("[A] court may modify a defendant's sentence after considering the factors set forth in § 3553(a) to the extent applicable if it finds that extraordinary and compelling reasons warrant such a reduction and such a reduction is consistent

---

[1] The BOP's inmate locator and COVID-19 cases websites are available at https://www.bop.gov/inmateloc/ and https://www.bop.gov/coronavirus/ (last visited Aug. 6, 2020), respectively.

with applicable policy statements issued by the Sentencing Commission." (internal quotations and citations omitted)).

Section 3582(c)(1)(A)'s exhaustion requirement generally "foreclos[es] compassionate release" where the "BOP has not had thirty days to consider [the defendant's] request to move for compassionate release on his behalf" or if "there has been no adverse decision by [the] BOP for [the defendant] to administratively exhaust within that time period." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see, e.g.*, *United States v. Orellana*, 2020 WL 1853797, at *1 (S.D. Tex. Apr. 10, 2020). Nonetheless, some "courts have concluded that [the exhaustion] requirement is not absolute and that it can be waived by the government or by the court, therefore justifying an exception in the unique circumstances of the COVID-19 pandemic." *Valentine v. Collier*, 956 F.3d 797, 807 (5th Cir. 2020) (Higginson, J., concurring) (per curiam) (citations omitted).

## III.

## ANALYSIS

*A.    Ezukanma Has Satisfied Section 3582's Exhaustion Requirement.*

Under 18 U.S.C. § 3582(c)(1)(A) as amended by the First Step Act of 2018, the Court may reduce the term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." § 3582(c)(1)(A).

Here, Ezukanma filed a request under this statute with the warden of his facility, which the warden received on May 17, 2020. Doc. 512, Def.'s Mot., 42. The warden denied that request on June 8, 2020, and Ezukanma states that he appealed this denial to the BOP but has not received a

response. *Id.* at 5, 42.

In his motion, Ezukanma appears to suggest that he has nonetheless satisfied § 3582(c)(1)(A)'s exhaustion requirement, because thirty days have lapsed since the warden received his request—irrespective of the denial. *See* Doc. 512, Def.'s Mot., 1 ("Petitioner may petition the sentencing court, after exhausting the administrative remedy from the Warden of the prison where he is incarcerated or the lapse of 30 days from request.").[2]

At first glance, the plain meaning of § 3582(c)(1)(A) seems to support Ezukanma's argument. Section 3582(c)(1)(A) provides that a defendant can motion the court for compassionate release after: (1) "the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf *or*" (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . . ." § 3582(c)(1)(A) (emphasis added). Applied here, it appears that Ezukanma has satisfied the second option by waiting thirty days from when the warden received his request before bringing his motion.

However, district courts in this circuit and others have split on whether this is the proper reading of § 3582(c)(1)(A)'s exhaustion requirement. *See United States v. Carter*, —F. Supp. 3d—, 2020 WL 3458598, at *2 (S.D. W.Va. June 25, 2020 ) ("Though the language of the statute is clear that upon the expiration of 30 days after the warden has received the compassionate release request, an inmate may petition the court, the 'lapse of 30 days' provision has been interpreted differently by some courts."); *United States v. Graham*, 2020 WL 3053106, at *3 (W.D. La. June 8, 2020)

---

[2] Though the Court is uncertain that Ezukanma intended to raise this argument, the Court nevertheless addresses it, because the Court's analysis of the argument is dispositive on the issue of whether Ezukanma has satisfied the exhaustion requirement.

(discussing split).

District courts on one side of the debate agree that "the lapse of 30 days" means the passage of thirty days from the warden's receipt of a request, even if the warden denies the request. *See Carter*, 2020 WL 3458598, at *3; *Graham*, 2020 WL 3053106, at *3.[3] Some of these courts have noted that "the plain language of Section 3582(c) evinces congressional intent that a defendant has a right to a prompt and meaningful judicial determination of whether she should be compassionately released, regardless of whether administrative remedies have been exhausted." *United States v. Russo*,

---

[3] *See also United States v. Haney*, —F. Supp. 3d—, 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020) ("Importantly, § 3582(c)(1)(A) does not contain an exhaustion requirement in the traditional sense."); *United States v. Stephenson*, —F. Supp. 3d—, 2020 WL 2566760, at *2 (S.D. Iowa May 21, 2020) (same); *United States v. Underwood*, 2020 WL 1820092, at *2 (D. Md. Apr. 10, 2020) ("[A] prisoner must exhaust the administrative appeal process, or wait 30 days, before his claim may be considered."); *United States v. Morris*, 2020 WL 2735651, at *5 (D.D.C. May 24, 2020) ("[T]o the extent exhaustion is required here, section 3582(c)(1)(A) does so only half-heartedly. In fact, the statute explicitly allows a defendant to file a compassionate release motion before he has exhausted his administrative remedies so long as he waits 30 days.").

For additional cases adopting this reading of § 3582(c)(1)(A)'s exhaustion requirement, see *United States v. Littles*, 2020 WL 4282219, at *2–3 (E.D. Ky. July 27, 2020); *United States v. Burnside*, —F. Supp. 3d—, 2020 WL 3443944, at *7 (N.D. Iowa June 18, 2020); *United States v. Ingram*, 2020 WL 3104643, at *2 (D. Minn. June 11, 2020); *United States v. Castillo*, 2020 WL 2820401, at *2 (S.D. Tex. May 29, 2020) (noting that "it appears that the court has jurisdiction" due to the lapse of thirty days after the defendant filed her motion but nonetheless waiving the exhaustion requirement); *United States v. Mazur*, —F. Supp. 3d—, 2020 WL 2113613, at *3 (E.D. La. May 4, 2020); *United States v. Guzman Soto*, —F. Supp. 3d—, 2020 WL 1905323, at *4 (D. Mass. Apr. 17, 2020); *United States v. York*, 2019 WL 3241166, at *5 (E.D. Tenn. July 18, 2019).

Further, while no circuit court has explicitly decided the issue, at least two decisions seem to implicitly adopt this reading. *See United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020) ("Prisoners who seek compassionate release have the option to take their claims to federal court within 30 days, no matter the appeals available to them."); *United States v. Harris*, —F. App'x—, 2020 WL 4048690, at *1 (3d Cir. 2020) (per curiam) ("The Government argued, and the District Court agreed, that because the Warden denied Harris's request within thirty days, he was required to completely exhaust the administrative remedy process. However, the statute states that the defendant may file the motion thirty days after the warden receives his request." (citing *Raia*, 954 F.3d 594, 595 (3d Cir. 2020))).

—F. Supp. 3d—, 2020 WL 1862294, at *6 (S.D.N.Y. Apr. 14, 2020)[4]; *see also Guzman Soto*, 2020 WL 1905323, at *5 (reasoning that this alternative to full exhaustion "suggests that Congress understood that some requests for relief may be too urgent to wait for the BOP's process"); *United States v. Anderson*, —F. Supp. 3d—, 2020 WL 2521513, at *4 (C.D. Ill. May 18, 2020) (noting the same).

However, on the other side of the split, many district courts read "the 'lapse of 30 days' language as applying only where the BOP has failed to respond to a compassionate release request within 30 days of its submission." *United States v. Powell*, 2020 WL 4210478, at *2 (S.D. Miss. July 22, 2020); *Ng Lap Seng*, 2020 WL 2301202, at *6. Thus, under this reading, if the warden denies an inmate's request before the lapse of thirty days, an inmate must fully exhaust his administrative remedies before filing his motion. *Powell*, 2020 WL 4210478, at *2 (citing, *inter alia*, *United States v. Allen*, 2020 WL 3159180 (S.D. Miss. June 12, 2020)). One of the rationales supporting this interpretation is that the first reading "would substantially undermine one of the goals of an exhaustion requirement—protecting agency authority, expertise, and the opportunity to correct mistakes—'as it [would] allow[] a defendant to come to court before the agency has rendered a final

---

[4] As one court has noted, the BOP seems to have adopted this interpretation too. *See United States v. Ng Lap Seng*, —F. Supp. 3d—, 2020 WL 2301202, at *5 n.11 (S.D. N.Y. May 8, 2020) (citing First Step Act-Frequently Asked Questions, Fed. Bureau of Prisons (accessed July 24, 2020) ("[U]nder the FSA, an inmate may now file a motion for compassionate release directly with the sentencing court 30 days after making a request to the BOP or after exhausting their administrative remedies."), https://www.bop.gov/inmates/fsa/faq.jsp#fsa_compassionate_release). However, the *Ng Lap Seng* court went on to note that it did not believe the BOP's interpretation was entitled to deference, "as the BOP does not have 'the sort of specific responsibility for administering the law that triggers *Chevron*.'" *Id.* (quoting *Sash v. Zenk*, 428 F.3d 132, 136 (2d Cir. 2005), *as amended on denial of reh'g*, 439 F.3d 61 (2d Cir. 2006)). In a similar vein, the Court notes that the Government has argued for this interpretation in numerous cases. *See, e.g.*, *Harris*, 2020 WL 4048690, at *1; *Ng Lap Seng*, 2020 WL 2301202, at *5. This Court need not rely on the BOP's or the Government's position to make its decision on this issue; the Court merely adds them to the pile of nonbinding authority supporting this reading of the exhaustion requirement.

decision' and foreclose higher-level BOP review of a request." *Ng Lap Seng*, 2020 WL 2301202, at *6 (alterations in original) (quoting *Haney*, 2020 WL 1821988, at *3). Further, the *Ng Lap Seng* court notes that the first reading would "render the statute's provision regarding full exhaustion of administrative remedies meaningless [in most cases], as defendants . . . would forego appealing a warden's denial of their compassionate release request if the 30-day period was nearing an end." *Id.*[5]

Here, because thirty days have passed since the warden received Ezukanma's request and Ezukanma has not completed the BOP's appeal process, the Court must decide which of these two interpretations best reflects the intent of Congress. "The task of statutory interpretation begins and, if possible, ends with the language of the statute." *United States v. Lauderdale Cty.*, 914 F.3d 960, 964 (5th Cir. 2019) (quoting *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 486 (5th Cir. 2013)). "When the language is plain, [courts] 'must enforce the statute's plain meaning, unless absurd.'" *Id.* (original quote in *Nowlin v. Peake (In re Nowlin)*, 576 F.3d 258, 261–62 (5th Cir. 2009)). "For the language to be considered ambiguous, however, it must be susceptible to more than one reasonable interpretation or more than one accepted meaning." *United States v. Kaluza*, 780 F.3d 647, 658–59 (5th Cir. 2015) (citing *Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 519 (5th Cir. 2004)).

"When construing statutes and regulations, [courts] begin with the assumption that the words were meant to express their ordinary meaning." *Id.* at 659 (quoting *Bouchikhi v. Holder*, 676

---

[5] For additional cases supporting this interpretation, see *United States v. Smith*, —F. Supp. 3d—, 2020 WL 2487277, at *7 (E.D. Ark. May 14, 2020); *United States v. Peuser*, 2020 WL 2732088, at *1–2 & n.1 (D. Neb. May 26, 2020) (collecting cases); *United States v. Early*, 2020 WL 2572276, at *2 (W.D. Pa. May 21, 2020); *United States v. Greenlove*, 2020 WL 3547069, at *6 (M.D. Pa. June 30, 2020); *United States v. Saenz*, 2020 WL 2767558, at *2 (S.D. Cal. May 28, 2020); *United States v. Nance*, 2020 WL 114195, at *2 (W.D. Va. Jan. 10, 2020); *United States v. Bolino*, 2020 WL 32461, at *1 (E.D.N.Y. Jan. 2, 2020); *United States v. Cassidy*, 2020 WL 1969303, at *4 (W.D.N.Y. Apr. 24, 2020); *United States v. Lowman*, 2020 WL 3472923, at *4 n.1 (W.D. N.C. June 25, 2020); *United States v. Miller*, 2020 WL 113349, at *2 (D. Idaho Jan. 8, 2020); *United States v. Weidenhamer*, 2019 WL 6050264, at *3 (D. Ariz. Nov. 8, 2019).

F.3d 173, 177 (5th Cir. 2012)). As explained above, the split in authority here is based on § 3582's use of the phrase "lapse of 30 days[.]" § 3582(c)(1)(A). The first group of courts interprets the "lapse of 30 days" to mean the passage of thirty days. *See, e.g.*, *United States v. Woodson*, —F. Supp. 3d—, 2020 WL 1673253, at *2 (S.D.N.Y. Apr. 6, 2020) ("The plain language of the statute is free from ambiguity."). This is consistent with dictionary definitions of "lapse" when used as a modifier for time. *See, e.g.*, *Lapse*, *Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/lapse (last visited July 29, 2020) ("a passage of time"); *Lapse*, *Dictionary.Cambridge.org*, https://dictionary.cambridge.org/us/dictionary/english/lapse (last visited July 29, 2020) ("a period of time passing between two things happening"). So, because the term "lapse" is used in § 3582 to modify a number of days, these definitions suggest that the statute's plain language refers to the passage of thirty days after the warden receives the inmate's request. *See Graham*, 2020 WL 3053106, at *3 ("The statute does not state that BOP must not act on inmate's request during the thirty-day waiting period to satisfy the thirty-day lapse provision."); *Carter*, 2020 WL 3458598, at *2–3.

The second group of courts has "interpreted the 'lapse' language to require the passage of 30 days without BOP action on the request, in essence reading the language as a futility provision." *United States v. Martin*, 2020 WL 3065302, at *2 (N.D. Miss. June 9, 2020) (quoting *Ng Lap Seng*, 2020 WL 2301202, at *6). This reading comes from definitions of lapse that refer to "the termination of a right or privilege through neglect to exercise it within some limit of time[.]" *Lapse*, *Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/lapse (last visited July 29, 2020); *see Lapse*, *Black's Law Dictionary* (11th ed. 2019) ("The termination of a right or privilege because of a failure to exercise it within some time limit or because a contingency has occurred or not occurred."). This definition implies that "'lapse of 30 days' might be referring to the situation of a

warden receiving a request but not acting on that request within 30 days." *Weidenhamer*, 2019 WL 6050264, at *3; *see Smith*, 2020 WL 2487277, at *7 (same). In other words, the "30-day period gives the warden time to respond to the inmate's request but prohibits the warden from sitting on the request beyond 30 days." *United States v. Van Sickle*, 2020 WL 3962225, at *2 (W.D. Wash. July 13, 2020) (citation omitted).

To start, the Court finds that the plain language of § 3582(c)(1)(A) unambiguously supports the reading that "lapse of 30 days" refers to the passage of thirty days from the warden's receipt of the request, irrespective of whether the warden denies the request. Even courts adopting the alternative reading of the statute admit this is the more "literal" meaning of the statute. *See Nance*, 2020 WL 114195, at *2. And the language surrounding "the lapse of 30 days" undermines the second reading, as "[t]he statute does not on its face require a defendant to exhaust administrative appeals 'following a denial' or qualify the 30 days provision as only applying after 'inaction.'" *Burnside*, 2020 WL 3443944, at *7; *see Guzman Soto*, 2020 WL 1905323, at *4 ("The government's contention that if the warden denies Defendant's request, [Defendant] is then required to fully exhaust all administrative remedies before this Court has authority to consider his request, ignores the plain language of the statute.") (cleaned up). Moreover, the statute makes (1) "full exhaustion" with the BOP or (2) waiting thirty days from the warden's receipt, "alternative" requirements, as evidenced by the statute's use of both "or" and "whichever is earlier." *See United States v. Somerville*, —F. Supp. 3d—, 2020 WL 2781585, at *4 (W.D. Pa. May 29, 2020). Interpreting the "lapse of 30 days from the receipt of such a request by the warden" as requiring an inmate to fully appeal a warden's denial read[s] additional requirements into the statute that aren't there." *Id.*; *see United States v. Jenkins*, 2020 WL 2814437, at *2 (D. Neb. May 26, 2020) ("[T]here are two options, and

the statute doesn't say that the second option evaporates if the warden happens to deny the prisoner's request before 30 days is up.").

Thus, applying the ordinary meaning of lapse when it modifies a time period or number of days, the statute is not ambiguous: an inmate may file a motion thirty days after he or she "requests compassionate release from the warden. No more, no less." *United States v. Brown*, —F. Supp. 3d—, 2020 WL 2091802, at *3 (S.D. Iowa Apr. 29, 2020) (citation omitted); *Woodson*, 2020 WL 1673253, at *2 ("The plain language of the statute is free from ambiguity.").

As discussed above, courts endorsing the second reading would argue that this conclusion undercuts § 3582's requirement that an inmate must "fully exhaust[] all administrative rights to appeal" before coming to court. *See* § 3582(c)(1)(A). As persuasively explained in *Smith*, the first reading "render[s] the statute's requirement of 'full exhaustion of all administrative rights to appeal' a mirage—or at the very least, it would turn what is best read as a requirement of full exhaustion into a defendant's voluntary option of full exhaustion." 2020 WL 2487277, at *8. The first reading thus, according to *Smith*, "eliminates any reason at all for a defendant to engage in the administrative appeals process," because the defendant has "no incentive" to appeal a warden's denial. *Id.* (citation omitted). The *Smith* court therefore concluded that this reading "flouts a well-trod canon of statutory construction" in making the full-exhaustion requirement "mere surplusage . . . ." *Id.*; *see Ng Lap Seng*, 2020 WL 2301202, at *6 (finding that the first reading would render the exhaustion requirement "meaningless").

The Court respectfully disagrees. To be sure, "the 30 day backstop that Congress explicitly included in § 3582 significantly limits the timeframe in which exhaustion of administrative remedies must occur." *Carter*, 2020 WL 3458598, at *3. But that does not render the "full exhaustion"

requirement meaningless. Rather, as some courts have noted, the thirty-day requirement is consistent with Congress's purpose in amending § 3582(c)(1)(A) through the First Step Act. Specifically, the requirement encourages the BOP "to act as quickly as practicable" in processing an inmate's claim that "extraordinary and compelling reasons" exist to reduce his or her sentence. *Carter*, 2020 WL 3458598, at *3; § 3582(c)(1)(A). Indeed, as *Haney* notes:

> [T]he hybrid requirement in this statute—either exhaust or wait 30 days—substantially reduces the importance of the first purpose, as it allows a defendant to come to court before the agency has rendered a final decision. Indeed, anyone familiar with the multiple demands that the BOP has faced for many years in this era of mass incarceration can reasonably infer that Congress recognized that there would be many cases where the BOP either could not act within 30 days on such a request or, even if it did act, its review would be superficial. Congress was determined not to let such exigencies interfere with the right of a defendant to be heard in court on his motion for compassionate release, and hence only limited him to 30 days before he could come to court in the ordinary course.

2020 WL 1821988, at *3. Other courts have noted that with the First Step Act amendment, "Congress sought to 'expand compassionate release' and 'expedite[] compassionate release applications.'" *United States v. Salvagno*, —F. Supp. 3d—, 2020 WL 3410601, at *4 (N.D.N.Y. Apr. 23, 2020) (citing 164 Congr. Rec. S7314-02, 2018 WL 6350790 (Dec. 5, 2018); Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n (2016) (statement of Michael E. Horowitz, Inspector General, Department of Justice)); *see United States v. Vence-Small*, —F. Supp. 3d —, 2020 WL 1921590, at *5 (D. Conn. Apr. 20, 2020) ("All that the text of the 30-day waiting time requirement suggests is that Congress understood that some requests for relief may be too urgent to be delayed beyond 30 days.").

Additionally, although few courts have noted this, the reading makes sense from a contextual standpoint if the "lapse of 30 days" is not read as an exhaustion requirement, but as a statutory

exception to the requirement. *See United States v. Montanez*, —F. Supp. 3d—, 2020 WL 2183093, at *2 (W.D.N.Y. May 5, 2020) ("Section 3582(c)(1)(A)'s language is clear: the only exception to the exhaustion requirement is the thirty-day backstop."); *Vence-Small*, 2020 WL 1921590, at *4 (same). Congress is surely permitted to create statutory exceptions to administrative-exhaustion requirements. *See, e.g.*, *Ross v. Blake*, 136 S. Ct. 1850, 1858–59 (2016) (holding that the Prison Litigation Reform Act exhaustion requirement was subject to the textual exception of "available" administrative remedies). Thus, reading the "lapse of 30 days" language as a statutory exception to the preceding "full exhaustion" requirement mitigates any concern that this interpretation creates surplusage.

In sum, the Court finds that the language of § 3582(c)(1)(A) is clear: a defendant may bring a motion under this section when he has either: (1) fully exhausted all administrative appeals of a failure of the BOP to bring a motion on his behalf; or (2) waited thirty days from when the warden of the defendant's facility receives such a request, regardless of whether the warden acts on the request.

Applying this interpretation of § 3582 here, the Court thus concludes that Ezukanma has satisfied the exhaustion requirement by qualifying for the thirty-day statutory exception to the requirement.

B.  *Ezukanma's Motion Fails on the Merits.*

Although Ezukanma has satisfied the exhaustion requirement, Ezukanma's motion fails to show "extraordinary and compelling reasons" justifying his early release. *See* § 3582(c)(1)(A).

The policy statement relevant to compassionate release—U.S.S.G. § 1B1.13(1)(A)—elaborates on circumstances that are extraordinary and compelling, including an

inmate's medical condition, age, and familial status. *See* U.S.S.G. § 1B1.13(1)(A) & cmt. 1.[6] In addition, the defendant must not pose a danger to the community. *See* U.S.S.G. § 1B1.13(2). However, since the enactment of the First Step Act, district courts in the Fifth Circuit have held that § 1B1.13 is no longer binding. *See, e.g.*, *United States v. Gonzales*, 2019 WL 5102742, at *2–3 (W.D. Tex. Oct. 10, 2019). These courts "consider[] the terms of U.S.S.G. § 1B1.13 while exercising [their] discretion to determine whether the defendant presents an extraordinary and compelling reason for compassionate release." *United States v. Heitman*, 2020 WL 3163188, at *3 (N.D. Tex. June 12, 2020) (citation omitted).

The Court does the same here and concludes that Ezukanma has not shown extraordinary and compelling reasons for release. Ezukanma does not qualify for the medical condition, age, or family circumstances criteria listed in the policy statement. *See* § 1B1.13(1)(A) & cmt. 1. Further, he has not shown that his health conditions combined with the COVID-19 pandemic qualify as extraordinary or compelling reasons.

Ezukanma suffers from hypertension, chronic ischemic heart disease, and chronic kidney disease. *See* Doc. 512, Def.'s Mot., 30. He claims that based on these medical conditions "[h]e is at high risk of severe illness" if he contracts COVID-19. *Id.* at 22. He also claims that "[t]he BOP simply does not have the staff or facilities to respond to this crisis humanely." *Id.* at 18.

While the Court does not discount that Ezukanma's underlying medical conditions may place him at a heightened risk of developing a severe illness if he contracts COVID-19, Texarkana FCI has

---

[6] The policy statement also provides a catch-all provision for the existence of "an extraordinary and compelling reason other than, or in combination with" any of the other listed reasons "[a]s determined by the Director of the [BOP]." § 1B1.13(1)(A) cmt. 1.

reported only five positive cases of COVID-19 at this time. Further, in the warden's denial of Ezukanma's request for compassionate release, the warden states, "Although you are being treated for medical conditions, your medical status is considered stable, and this facility can adequately manage your medical needs. Based on CDC guidelines you do not have a serious heart condition and your Chronic Kidney disease has been resolved . . . ." Doc. 512, Def.'s Mot., 43.

Moreover, Ezukanma's general complaints about the BOP's management of COVID-19 do not show that the BOP has failed to adequately control the spread of the virus at his facility. *See id.* at 13–20. "[T]he mere existence of COVID-19 in society and the possibility that it may be spread to a particular prison alone cannot independently justify compassionate release, especially considering [the] BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597 (citation omitted); *see also United States v. Lyons*, 2020 WL 3129696, at *2 (N.D. Tex. June 11, 2020) ("[G]eneral concerns about COVID-19 without more are simply insufficient to invoke Section 3582(c)(1)(A), especially considering that there are only 10 positive cases among inmates and staff at FCI Fairton.").

Absent evidence that the virus has spread beyond the small amount of cases currently present at Texarkana FCI, the Court declines to find extraordinary circumstances are present as to Ezukanma.

C.   *Consideration of the Factors of 18 U.S.C. § 3553(a) Suggests that Compassionate Release is Not Warranted.*

Prior to granting a motion for compassionate release under § 3582(c)(1)(A), a court must "consider[] the factors set forth in section 3553(a) to the extent they are applicable . . . ." These factors include consideration of both the "circumstances of the offense" and the "need for the

sentence imposed . . . to reflect the seriousness of the offense[.]" *See* 18 U.S.C. § 3553(a).

Here, Ezukanma was convicted of health care fraud involving a total of $34,003,151.24. Doc. 363, J., 6. Ezukanma has served less than twenty-five percent of his 200-month sentence. Under these circumstances, the Court is doubtful that the factors of § 3553(a) favor compassionate release. But the Court need not decide this today, as Ezukanma has not shown extraordinary and compelling reasons for compassionate release.

### IV.

### CONCLUSION

Although Ezukanma has satisfied the exhaustion requirement, his Motion for Compassionate Release Pursuant [to] Title 18 U.S.C. § 3582(c)(1)(A) (Doc. 512) is **DENIED WITHOUT PREJUDICE,** because he has not provided extraordinary and compelling reasons for compassionate release. Ezukanma may re-file his motion if the circumstances at Texarkana FCI change with respect to COVID-19 or if his health significantly deteriorates.

**SO ORDERED.**

**SIGNED: August 6, 2020.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE